ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NNABUGWU GOGOH,
    Petitioner

v.

JANET RENO, et al.,
    Respondents

NO.: 1:CV-00-1211

(Judge Rambo)

FILED
HARRISBURG, PA
AUG 8 2000
MARY E. D'ANDREA, CLERK

RESPONSE OF JANET RENO
TO THE PETITION FOR WRIT OF HABEAS CORPUS

I.    **Procedural History**

Nnabugwu Gogoh, pro se, filed this petition for writ of habeas corpus pursuant to 18 USC § 2241 on April 20, 2000. Named as respondents are Janet Reno, Attorney General of the United States and Frances Homes, Acting District Director of the Immigration and Naturalization Service ("INS").

On July 19, 2000, this Court issued an order directing service of the petition. The Court also ordered a response to the petition to be filed within twenty (20) days. This brief is filed in response to that order.

1

## II. Statement of Facts

The petitioner is a native and citizen of Nigeria who was admitted to the United States on September 14, 1976, as an immigrant. (Ex. 1) On March 25, 1999, the petitioner was convicted in the United States District Court for the Southern District of New York of the offense of bank fraud, in violation of Title 18, United States Code, Section 1344 and 2. The statute under which the petitioner was convicted, 18 U.S.C. § 1344, entitled "bank fraud," provides: "whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." (Ex. 2)

In a Notice to Appear dated July 22, 1999, the Immigration and Naturalization Service charged that the petitioner is subject to removal pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C.§ 1101(a)(43)(D), on the basis of: an offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific

2

unlawful activity) if the amount of the funds exceeded $10,000.[1] (Ex. 1) On September 24, 1999, the Service charged, in an Additional Charges of Inadmissibility/Deportability (Form I-261) that the respondent is subject to removal under section 237(a)(2)(A)(iii) of the Act, as an alien who, at any time after admission, has been convicted of an aggravated felony, as defined in section 101(a)(43)(M) of the Act, 8 U.S.C. § 1101(a)(43)(M), on the basis of an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. The Service also charged that the petitioner's offense falls under the aggravated felony definition pursuant to section 101(a)(43)(U) of the Act as an attempt to commit the offense described in section 101(a)(43)(M) of the Act.

The Immigration Judge determined that the Service did not prove removability inasmuch as it did not establish that the petitioner's crime involved a loss to a victim or victims in excess of $10,000 (Ex. 3) In reaching his decision, the Immigration Judge declined to admit or consider the Presentence Investigation Report prepared by a United States Probation Officer for the United States District Court Judge (Ex. 3, pp 4-5) The presentence report reflects that the relevant forged checks were made out in the sums of $35,353.95 and $39,995 (Id).

In a decision dated October 6, 1999, an Immigration Judge

---

[1] The Service subsequently withdrew this charge.

3

terminated removal proceedings against Gogoh. (Ex. 3, 4) On that same date, the Immigration Judge issued a bond determination, releasing the petitioner on his own recognizance. (Ex. 5, 6)

The INS appealed both decisions. (Ex. 7 and 8). At that same time, the INS filed a Form EOIR-43, Notice of Intent to Appeal Custody Redetermination (Ex. 9). That notice specifically provides that "filing this form on 10-6-99 automatically stays the Immigration Judge's custody redetermination decision. See 8 C.F.R. § 3.19 (i)(2)." (Id.)

On March 29, 2000, the Board of Immigration Appeals ("BIA") issued a decision and sustained the appeal of the INS, vacated the order of the Immigration Judge dated October 6, 1999 and remanded the matter to the Immigration Court for proceedings consistent with the Board's decision. (Ex. 10) On April 27, 2000, the BIA also sustained the INS' appeal of the bond decision. The BIA found that because petitioner is subject to section 236 (c)(1)(B) of the Immigration and Naturalization Act, the Immigration Judge is without jurisdiction over the custody determination under 8 C.F.R. §236.1(c)(11). The October 6, 1999 decision was vacated and the case remanded. (Ex. 11)

On April 26, 2000, the Immigration Judge ordered petitioner deported. (Ex. 12) Gogoh has filed an appeal which is pending before the BIA. (Ex. 13)

4

### III. Question Presented

Has the INS properly detained the petitioner when the order for removal is not yet final?

### IV. Argument

#### A. Gogoh was properly detained during the INS' appeal.

Section 236 of the Immigration and Naturalization Act governs the apprehension and detention of aliens in removal proceedings. "For most criminal . . . aliens, including those who are deportable under section 237(a)(2)(A)(iii), detention pending a decision on their removal is mandatory." <u>In re: Joseph</u>, BIA Interim Decision 3387, 1999 WL 27137 (April 23, 1999). The automatic stay regulations implement this requirement of mandatory detention when the INS appeals from a decision by the Immigration Judge.

The automatic stay regulation, 8 C.F.R. §3.19(i)(2), provides:

> Automatic stay in certain cases. If an alien is subject to section 242(a)(2) of the Act (as in effect prior to April 1, 1997, and as amended by section 440(c) of Pub. L. 104-132), section 303(b)(3)(A) of Div. C. of Pub. L. 104-208, or section 236(c)(1) of the Act (as designated on April 1, 1997), and the district director has denied the alien's request for release or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to

5

> Appeal Custody Redetermination (Form EOIR-43) with the Immigration Court on the day the order is issued, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. The stay shall lapse upon failure of the Service to file a timely notice of appeal in accordance with §3.38. (Emphasis added.)

Thus, a stay pursuant to § 3.19(i)(2) is automatic upon the Service's timely filing of the Form EOIR-43. The language "shall be stayed" and "shall remain in abeyance" is, in the words of the Board of Immigration Appeals, "patently mandatory." In re Matter of Joseph, supra. The automatic stay provision exists as a measure to carry out Congress' clearly stated intent that, with few exceptions, aliens in removal proceedings pursuant to one of the criminal grounds enumerated in section 236(c)(1) must be detained pending a decision on their removability. Id. It serves as a "safeguard for the public" by preserving "the status quo briefly while the Service seeks expedited review of the immigration judge's custody decision." Id. As a practical matter, in the present regulatory scheme, the automatic stay provision will generally only come into play when the Service disputes an immigration judge's finding that a criminal alien is eligible to be released (that is; not subject to the mandatory detention provisions of section 236(c)(1)). Thus, Gogoh was lawfully detained pending the BIA review of the Immigration Judge's decision to terminate proceedings.

6

B.  **Gogoh's Detention Pending A Final Order Of Removal Is Constitutional**

In the petition, Gogoh claims that he is in INS custody in violation of his right to due process. In the event the Court construes Gogoh's claim regarding the impropriety of his continued detention as encompassing a constitutional claim concerning the legality of mandatory detention, respondents now address that issue.

The Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999), was the first appellate court to consider and uphold the constitutionality of mandatory detention pending proceedings for criminal aliens under section 236(c) of the INA, 8 U.S.C. §1226(c). Subsequently, the majority of courts that have addressed the issue have reached the same result. See Richardson v. Reno, 162 F.3d 1338, 1364 n.119 (11th Cir. 1998), vacated on other grounds, 119 S. Ct. 2016 (1999); Okeke v. Pasquarell, 80 F.Supp. 2d 635 (W.D. Tex. Jan. 11, 1999); Reyes v. Underdown, 73 F.Supp.2d 653 (W.D. La. Nov. 3, 1999); Jacques v. Reno, 73 F.Supp.2d 477, 483 (M.D. Pa. Oct. 29, 1999) (McClure, J.); Sierra-Tapia v. Reno, __ F.Supp.2d __, 1999 WL 803898 (S.D. Cal. Sept. 30, 1999) (attached); Alikhani v. Fasano, 70 F. Supp.2d 1124 (S.D. Cal. July 19, 1999); Edwards v. Blackman, 48 F. Supp.2d 477 (M.D. Pa. 1999), vacated on other grounds,

7

_____; Galvez v. Lewis, 56 F. Supp.2d 637 (E.D. Va. 1999); Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1114 (S.D. Cal. 1999). But see Chukwuezi v. Reno, 3:CV-99-2020, Mem. Op. (May 16, 2000 M.D. Pa.)(Vanaskie, C.J.); Bouayad v Holmes, 74 F. Supp.2d 471 (E.D. Pa. 1999).

Detaining criminal aliens is part of a removal process, not an end result. Section 236(c) is one of several pieces of legislation collectively designed to accelerate the removal process for criminal aliens. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) established a framework designed to effect a net increase in removal orders entered against criminal aliens. Through IIRIRA's provisions, Congress not only mandated the detention of criminals pending removal proceedings, but also took away the Attorney General's discretionary authority to forgo the removal of aggravated felons, eliminated judicial review, and set a 90-day time limit by way of instruction to INS for physical removal after a final order is entered. See 8 U.S.C. §§ 1101(f)(3) and (8), 1158(b)(2)(B), 1226(c) and (e), 1229b(a)(3), (b)(1)(B), (C), (2)(C), (D), 1229c(a)(1), 1231(a), (b)(1)(A), (C), 1231(a)(2), 1252(a)(2)(C) (Supp. III 1998).

Congress implicitly recognized that the curtailment of individual liberty interests was necessary to effect a net increase in removal orders against criminal aliens. That is,

8

while the IIRIRA demands the detention of all criminal aliens from start to finish of the administrative removal process without an individual assessment on dangerousness and flight risk, it does so based on the theory that such limitation is necessary to ensure a more effective and credible removal process generally. See H.R. Rep. No. 104-469(I) (1996), available in 1996 WL 168955; 142 Cong. Rec. S3329, 1996 WL 174902 (daily ed. Apr. 15, 1996) (statement of Sen. Abraham) ("These provisions collectively will allow us to dramatically increase the number of criminal aliens who are deported.") (emphasis added).

Respondents do not dispute that Section 1226(c) is subject to some level of substantive due process review.[2] See Fiallo v. Bell, 430 U.S. 787, 793 n.5 (1977). Because of the "plenary powers" doctrine, the proper standard of review here is a deferential rational-relation standard, under which Section 1226(c) is constitutional so long as it is "rationally" related

---

[2]  The Attorney General's implementing regulations establish three layers of administrative review over custody determinations pending removal proceedings. The alien initially obtains automatic custody review by the INS District Director and, if the decision is unfavorable, the alien may seek redetermination before an IJ and ultimately appeal to the BIA. 8 C.F.R. § 3.19(a), 236.1(d) (1999). In Section 1226(c) cases, the administrative agency has the jurisdiction, pursuant to 8 C.F.R. § 3.19(h)(2)(ii) (1999), to determine whether the alien in custody actually falls within a category of criminal aliens subject to interlocutory detention pending removal proceedings. See Matter of Joseph, Int. Dec. 3398, 1999 WL 339053 (BIA 1999) (attached). If the alien does fall within the interlocutory detention provision, then there is no authority to entertain a request for release on bond (unless the alien is eligible for Witness Protection Program benefits). Id.

9

to a "legitimate" government interest. See Reno, 507 U.S. at 300-01, 306; Carlson v. Landon, 342 U.S. 524, 540-41 (1952) (upholding INS detention that was not clearly "without reasonable foundation").

The principle of judicial deference to legislative choices is magnified in the immigration context. See Fiallo, 430 U.S. at 792; Harisiades v. Shaughnessy, 342 U.S. 580, 588-589 (1952). That basis for judicial caution applies with equal force in the immigration detention context. See Wong Wing v. United States, 163 U.S. 228, 234 (1896). Releasing an alien may also jeopardize the public safety and compromise the government's enforcement objectives. Carlson, 342 U.S. at 538.

The most appropriate characterization of liberty interest at stake is the interest of a deportable criminal alien in being released pending removal proceedings. As the Seventh Circuit explained, the private interest implicated by INA § 236(c)'s detention requirement "is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." Parra, 172 F.3d at 958. Courts are required to adhere to the prudent course of looking to the concrete facts of a case to determine what right is at issue. See Washington v. Glucksberg, 521 U.S. 702, 722-24 (1997).

The interest of the alien at stake in § 236(c) cases is a non-fundamental interest in being released pending proceedings,

not in an individualized hearing on the question of whether he will be released. As the Second, Fifth, and Seventh Circuit Courts have recognized, a deportable alien does not possess the same "liberty" as a citizen. See Zadyvdas, 185 F.3d at 289; Parra, 172 F.3d at 958; Doherty, 943 F.2d at 209-10. In a certain sense, deportable criminal aliens in removal proceedings possess no "right to come and go at will." See Flores, 507 U.S. at 302. The reason is two-fold: (1) release on bond has always been a privilege and never a matter of right or entitlement and (2) aliens are subject to the will of Congress when it comes to matters associated with their continued presence within our society. See Flores, 507 U.S. at 305-06; Harisiades, 342 U.S. at 586-87.

Consequently, although a criminal alien's physical freedom is being infringed temporarily during his removal proceedings, he has not been unlawfully deprived of any "fundamental liberty interest" in the constitutional sense. See Parra, 172 F.3d at 958; see also Flores, 507 U.S. at 306, Carlson, 342 U.S. at 537, 540-41; Doherty, 943 F.2d at 208-11. Because Section 1226(c) does not implicate a fundamental right, the scope of review is rational basis review. See Flores, 507 U.S. at 306.

Section 1226(c) is a reasonable exercise of congressional power, as it clearly furthers a legitimate governmental purpose. The statute seeks to prevent clearly deportable criminal aliens

11

with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal. Preventing danger to the community and flight have long been considered legitimate regulatory goals. See, e.g., Salerno, 481 U.S. at 748-49; Schall v. Martin, 467 U.S. 253, 251 (1984); Bell v. Wolfish, 441 U.S. 520 (1979); Carlson, 342 U.S. at 534. These goals have been paramount among the immigration enforcement concerns of Congress and the Attorney General over the past decade, with mounting emphasis in the past three years as the problems of widespread recidivism and abscondment have come increasingly to light.

A 1995 report of the Senate Governmental Affairs Committee observed that "[i]n New York, for example, in fiscal year 1993, out of 1695 [orders to surrender for deportation] sent to criminal and non-criminal aliens, 1486, or 87.7 percent failed to surrender. Also, in New York, there were $2.4 million in bonds breached in fiscal year 1993."). S. Rep. No. 104-48, 1995 WL 170285 (Apr. 7, 1995) (emphasis added); see also id. ("Through 1992, nearly 11,000 criminal aliens convicted of aggravated felonies (which are particularly serious crimes) failed to appear for deportation hearings. . . .") (emphasis added).

There can be no question that removing deportable criminal aliens from the United States, and preventing them from absconding or committing further crimes in the process, are

12

legitimate and reasonable goals. See, e.g., Salerno, 481 U.S. at 747; Bell v. Wolfish, 441 U.S. 520. Nor is there any doubt, in light of the disturbing rates of abscondment and recidivism discussed above, that the detention requirement rationally advances these objectives, or that a rational relationship exists between the "aggravated felon" classification and danger to the community and flight risk. Hence, Section 1226(c)(2) rests on a legitimate basis, and Gogoh's challenge must fail. See Flores, 507 U.S. at 306; Fiallo, 430 U.S. at 794-95.

Section 1226(c) also does not violate Gogoh's procedural due process rights. In assessing the legitimacy of any procedural due process claim, great judicial deference should be given to Congress' determination of what process is due. See Weiss, 510 U.S. at 176-77. The due process analysis set out in Mathews v. Eldridge, 424 U.S. 319, (1976), requires the court "to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality." Parra, 172 F.3d at 957 (emphasis added).

As the Seventh Circuit correctly observed, criminal aliens covered by Section 1226(c) do not have any constitutional "right" or "liberty interest" in avoiding detention pending removal proceedings, because by virtue of their criminal conduct and

13

convictions they have "forfeited any legal entitlement to remain in the United States." See Parra, 172 F.3d at 958. Consequently, "[t]he private interest here is not liberty in the abstract, but [merely] liberty in the United States by someone who is no longer entitled to remain in this country." Id.

The Parra court's reasoning applies in this case. Because Gogoh is properly in the INS' jurisdiction and does not dispute the material facts underlying the criminal removal charges, the Court should significantly reduce the weight accorded his private interests in evaluating the due process claim. See Parra, 172 F.3d at 958.

Moreover, on the weight of the Government's interest, the Court may not substitute its judgment for the informed decisions of Congress. Cf. Weiss, 510 U.S. at 176-77. Parra's reasoning is legally sound:

> The Supreme Court held in United States v. Salerno, 481 U.S. 739 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, see Fiallo v. Bell, 430 U.S. 787, 792 (1977), the constitutionality of §1226(c) is ordained.

Parra, 172 F.3d at 958. For these reasons, the Court should conclude that Section 1226(c) does not violate Gogoh's procedural

14

due process rights.

**WHEREFORE**, the respondents respectfully ask the Court to deny the request for habeas corpus relief.

### V. Conclusion

For all of the foregoing reasons, the petition should be denied.

>                                 Respectfully submitted,
>
>                                 DAVID M. BARASCH
>                                 United States Attorney
>
>                         By: _____
>                                 ANNE K. FIORENZA
>                                 Assistant U.S. Attorney
>                                 P.O. Box 11754
>                                 Harrisburg, PA 17108-1754
>                                 (717) 221-4482
>                                 Fax: (717) 221-2246

Date:    August 8, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NNABUGWU GOGOH,                    :
    Petitioner              :    NO.: 1:CV-00-1211
                             :
v.                                 :    (Judge Rambo)
                             :
JANET RENO, et al.,                :
    Respondents             :
                             :

### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

    On this 8th day of August, 2000, she served a copy of the foregoing document by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania to:

        Nnabugwu Gogoh
        55247
        York County Prison
        3400 Concord Road
        York, PA 17402

*Rebecca A. Plesic*
REBECCA A. PLESIC
Legal Secretary